# UNITED STATES DISTRICT COURT
### for the
### Middle District of North Carolina

| | |
|---|---|
| In the Matter of the Seizure of<br>*(Briefly describe the property to be seized)*<br><br>All funds on deposit held in the name of Kris F Williams Falcon and TPM<br>Home Health Agency in Woodforest National Bank account number<br>1261001919 | )<br>)<br>)<br>)<br>)<br>) |

Case No.   1:23MJ119-1

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE BY TELEPHONE OR OTHER
## RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the _____Middle_____ District of _____North Carolina_____ is subject to forfeiture to the United States of America under ____18____ U.S.C. __§§ 981 and 982__ *(describe the property)*:

All funds on deposit held in the name of Kris F Williams Falcon and TPM Home Health Agency in Woodforest National Bank account number 1261001919

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

_/s/ Corey E. Maser, Special Agent, FBI_
*Applicant's signature*

Corey E. Maser, Special Agent, FBI
*Printed name and title*

In accordance with Rule 4.1(b)(2)(A), the Applicant attested under oath to the contents of this Application, which was submitted to me by reliable electronic means, on this 13th day of March, 2023, at 1:48 p.m.

Date: 03/13/2023

City and state:   Durham, NC

*Judge's signature*

Hon. Joe L. Webster, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATIONS FOR
## SEIZURE WARRANTS

I, Corey E. Maser, Special Agent with the Federal Bureau of Investigation ("FBI") state under penalty of perjury, pursuant to Title 28, United States Code, Section 1746, that the following is true and correct:

## INTRODUCTION AND AGENT BACKGROUND

1.     I am an investigative or law enforcement officer of the United States within the meaning of Rule 41(a) of the Federal Rules of Criminal Procedure. I have been employed with the FBI since February 2009 and am currently assigned to the Raleigh Resident Agency of the Charlotte Division.  While employed by the FBI, I have been trained to work a variety of federal criminal investigations including, but not limited to, health care fraud, public corruption, and financial crimes, including mortgage fraud.  I am currently tasked with investigating federal crimes associated with financial crimes and health care fraud as part of the White Collar Squad.  I have investigated federal criminal violations related to health care fraud.  I also have received FBI-sponsored training in health care fraud investigations.

2.     This Affidavit is made in support of applications for seizure warrants for the property described below:

Financial accounts:

a. All funds on deposit in Woodforest National Bank account number 1261308579 in the name of Kris F Williams Falcon;

b. All funds on deposit in Woodforest National Bank account number

1261805087 in the name of Kris F Williams Falcon;

c. All funds on deposit in Woodforest National Bank account number 1261001919 in the names of Kris Williams Falcon and TPM Home Health Agency;

Personal property:

a. 2022 Land Rover Range Rover Evoque S, VIN SALZJ2FXXNH164782; and

b. 2022 Dodge Charger SDN SE, VIN 2C3CDXBGXNH134980.

Based on the investigation described in this Affidavit, there is probable cause to believe that these properties constitute or are derived from proceeds traceable to specified unlawful activity, specifically Title 18, United States Code, Sections 1347 (health care fraud) and 1343 (wire fraud), or were involved in transactions or attempted transactions in violation of Title 18, United States Code, Sections 1956 and/or 1957, and are therefore subject to seizure and forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(A) and (C) and 982(a)(1) and (7).

3.      This investigation concerns Kris Williams Falcon ("FALCON"). As will be shown below, there is probable cause to believe that FALCON fraudulently billed an insurance company headquartered in Durham, North Carolina (hereinafter referred to as "VICTIM COMPANY") for services that she did not provide and/or was not authorized to provide. FALCON submitted fraudulent claims to VICTIM COMPANY for over $7 million dollars in services, and VICTIM COMPANY paid FALCON over $4 million dollars.

4.     The facts and information contained in this Affidavit are based on my personal knowledge, as well as information obtained from witness interviews, documents, law enforcement records, and interviews and reports from other sworn law enforcement officers.

5.     Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the issuance of warrants, I have not included each and every fact known to me concerning this investigation.  Rather, I have set forth only the facts that I believe are necessary to establish the requisite foundation for a probable cause finding to support the issuance of the requested warrants.

## STATUTORY AUTHORITY

6.     This investigation concerns alleged violations which constitute "specified unlawful activity" within the meaning of Title 18, United States Code, Section 1956(c)(7), specifically violations of Title 18, United States Code, Section 1347 (health care fraud), and Title 18, United States Code, Section 1343 (wire fraud).

a.     Title 18, United States Code, Section 1347 prohibits (a) knowingly and willfully executing, or attempting to execute, a scheme or artifice (1) to defraud any health care benefit program; or (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program.  A violation of Section 1347 is a "Federal health care offense" pursuant to Title 18, United States Code, Section 24(a).

3

b.    Title 18, United States Code, Section 24(b) defines a "health care benefit program" as "any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract." Insurance companies that provide payment and reimbursement for medical services qualify as a health care benefit program. VICTIM COMPANY is a health care benefit program.

c.    Title 18, United States Code, Section 1343 prohibits a person from transmitting or causing to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.

## INVESTIGATION

7.    Until on or about April 27, 2021, FALCON was a Certified Alcohol and Drug Counselor (CADC) in the state of North Carolina. Records obtained through the investigation list FALCON associated with two business: TPM Addiction and Christian

4

Psychology and TPM Home Health Care.[1] Neither of those businesses is registered with the North Carolina Secretary of State.

8.     The North Carolina Addictions Specialist Professional Practice Board (NCASPPB) initiated an investigation into FALCON after receiving a complaint that she improperly provided a psychological evaluation to a patient (a police officer) even though she was not a licensed psychologist.

9.     On January 7, 2021, a private investigator, at the request of an NCASPPB attorney, contacted FALCON telephonically.   According to the private investigator's report, "Investigator advised her that I was trying to deliver a Second Notice of Hearing to her. She advised she had never seen the First Notice of Hearing and thought the Board had already convened and revoked her credentials.  She stated she closed her business at 809 Katie St. and had also lost her home through foreclosure."  The investigator served the Second Notice of Hearing via email and FALCON replied to the email, but did not sign the Return of service form by email as of January 14, 2021.

10.     On April 27, 2021, NCASPPB permanently revoked FALCON's CADC license.

11.     After her license was revoked, and between at least April 28, 2021 and December 31, 2022, FALCON submitted fraudulent claims to VICTIM COMPANY for services she was not authorized to provide and/or did not provide, as further described in

---

[1] On a check drawn on FALCON's account ending in x1919 dated May 10, 2021, FALCON wrote "closed" next to the name "TPM Home Health Agency" that was preprinted on the top left of the check.

this Affidavit. VICTIM COMPANY paid FALCON more than $4 million based on these fraudulent claims.

12.     On or about August 10, 2022, VICTIM COMPANY began an internal investigation of FALCON after VICTIM COMPANY was alerted that FALCON lost her CADC license.

13.     As part of VICTIM COMPANY's investigation, it requested a sample of medical records from FALCON for services she allegedly provided between April 28, 2021, and May 22, 2022. The records provided by FALCON were for counseling services, some of which were allegedly provided to herself and her husband. VICTIM COMPANY confirmed that even if the services were provided as alleged in the records, FALCON was not authorized to provide the services because she did not hold the proper license.[2] VICTIM COMPANY terminated the practitioner, FALCON, from all networks due to revocation of her license.

14.     VICTIM COMPANY referred the case against FALCON to the North Carolina Department of Insurance ("NC DOI"), and NC DOI and the Federal Bureau of Investigation ("FBI") commenced an investigation.

15.     NC DOI and FBI also confirmed that NCASPPB permanently revoked FALCON's CADC status as of April 27, 2021. FBI and NC DOI also obtained billing

---

[2] Furthermore, it is illegal to provide, or attempt to provide, substance abuse services without a license. *See* N.C. Gen. Stat. § 90-113.43.

6

records from VICTIM COMPANY, bank records, and the patient records that FALCON provided VICTIM COMPANY in response to the audit.

16. The billing records from VICTIM COMPANY indicated the Place of Services ("POS") FALCON billed for was an "office." Although no further location information was provided, the investigation revealed that FALCON was living and operating in Raeford, North Carolina during the relevant time periods as evidenced by S.B.'s police report detailed below. FALCON also billed for a POS described as telehealth provided other than in patient's home.

17. The Healthcare Common Procedure Coding System ("HCPCS") is a collection of standardized codes that represent medical procedures, supplies, products, and services. The codes are used to facilitate the processing of health insurance claims by Medicare and other insurers.

18. FALCON submitted claims to VICTIM COMPANY for services allegedly provided after April 28, 2021, using 62 different HCPCS codes. VICTIM COMPANY paid FALCON for services she claimed to have provided based on 34 of the 62 codes. A nurse investigator with VICTIM COMPANY confirmed that 32 of those codes require some type of credentialing. The other 2 codes require a bachelor's degree, but constituted less than 0.06% of the total amount paid to FALCON for services she claimed to have provided.

19. Over 85% of the reimbursements that VICTIM COMPANY paid FALCON were based on FALCON's billings with the code H2036 – Alcohol and/or other drug treatment program, per diem.

20.     Per diem means providing the service, in this case counseling, all day for approximately eight to ten hours. In an interview, VICTIM COMPANY explained that: (1) per diem codes are generally used by providers who offer in-patient or residential treatment to beneficiaries; and (2) regardless, FALCON was prohibited for billing using that code because she was not licensed to provide any type of treatment or counseling to patients.

21.     FALCON also submitted claims to VICTIM COMPANY for services she allegedly provided to herself. VICTIM COMPANY paid FALCON over $500,000 for billings FALCON submitted for services she allegedly provided to herself.

## INFORMATION PROVIDED BY S.B.

22.     On November 16, 2022, an individual identified herein as S.B. went to the Raeford Police Department and reported that an investigator from VICTIM COMPANY stated that FALCON submitted several medical insurance claims using S.B.'s provider information[3] and that VICTIM COMPANY had documents with S.B.'s alleged signature. S.B. said she has not provided any treatment services to FALCON and only rented building space from her.

23.     On November 22, 2022, a Raeford Police Officer interviewed S.B. S.B. said that FALCON was her "landlord" at an office located at 310 Birch Street in Raeford. S.B. said that in 2021, she began looking for a new mentor and colleague and came across an article about FALCON in "Psychology Today." S.B. reached out to FALCON, and

---

[3] S.B. is a Licensed Clinical Mental Health Counselor.

8

FALCON offered to help S.B. set up her own practice. S.B. thought that at the time, FALCON was a licensed clinical social worker and addiction specialist.

24.    S.B. noted that FALCON claimed to be in medical school, and that in December 2021, FALCON said that she graduated from medical school at Montreat College. FALCON threw herself a party for her "graduation."

25.    According to Montreat College's website, it offers undergraduate and masters programs in health sciences and counseling, but does not have a medical school. Further, based on the investigation to date, FALCON appears to improperly refer her to herself as a doctor. In an unrelated investigation, FALCON's name appeared as the purchaser of several fraudulent diplomas. Moreover, FALCON attached a series of certificates and diplomas to an application she submitted to NCASPPB to obtain her CADC license, none of which would support her title as doctor.

26.    S.B. said she learned FALCON lost her license and that FALCON is currently treating patients by providing counseling sessions, ultrasonic cavitation, and cosmetic injections for body enhancements.

27.    Regarding the claims, S.B. said that she did not receive any of the funds for the claims that FALCON submitted listing S.B. as the provider. S.B. said she did not understand how that could be the case.

28.    As described more fully in paragraph 40 below, this investigation has revealed that S.B. received payments from VICTIM COMPANY for services allegedly provided by FALCON and received substantial payments from FALCON prior to making the statements described in the preceding paragraphs. Accordingly, while many of S.B.'s

allegations about FALCON are corroborated by the investigation, the extent of S.B.'s involvement in the scheme detailed in this affidavit is still unknown.

## ANALYSIS OF ACTIVITY IN FALCON'S BANK ACCOUNTS

29.     I have reviewed records provided by Woodforest National Bank for three accounts maintained by FALCON:

a.   *Checking Account ending in 8579 ("WNB x8579").* On or about April 5, 2019, FALCON opened an individual checking account ending in 8579 in the name of Dr Kris F Williams Falcon POD, at 380 Springhaven Drive, Raeford, North Carolina.  FALCON is the only authorized signer on this account." There is no indication that this account had a business purpose. Statements reviewed for this account covered the period from December 21, 2019, through January 20, 2023.

b.   *Business Simple Checking Account ending in 1919 ("WNB x1919").*  On or about April 9, 2019, FALCON opened a Business Simple Checking account ending in 1919 in the name of Kris Williams Falcon, TPM Home Health Agency, at 207 Wind Swept Street, Raeford, North Carolina.  The Account Agreement indicates the business is a sole proprietorship. FALCON is the only authorized signer on the account. Statements reviewed for this account covered the period from January 1, 2020, through December 31, 2022.

c.   *Personal Savings Account ending in 5087 ("WNB x5087").* On or about July 27, 2019, FALCON opened a personal savings account ending in 5087 in the name of Kris F Williams Falcon POD, at 207 Wind Swept Street, Raeford,

10

North Carolina. FALCON is the only authorized signer on this account. Statements reviewed for this account covered the period from January 1, 2020, through December 31, 2022.

30. This investigation and review of bank records determined that Automatic Clearing House ("ACH") payments from VICTIM COMPANY for fraudulently billed services were deposited into WNB x8579. In total, $4,231,667.85 in ACH payments from VICTIM COMPANY were deposited into WNB x8579 after the date FALCON's CADC license was revoked.

31. VICTIM COMPANY records show that the total amount paid for services billed by FALCON prior to April 28, 2021, was $17,950.90, and a portion of these claims were paid directly to the patient-members.

32. A review of bank records and claims data provided by VICTIM COMPANY revealed that beginning on June 1, 2021, ACH deposits from VICTIM COMPANY into FALCON's account included payments for services that FALCON alleged to have provided on and after April 28, 2021 – i.e., after the date her license was officially revoked. Some ACH payments from VICTIM COMPANY after June 1, 2021, also included payments for services allegedly provided before FALCON's license was revoked. While some delay in medical billing is normal, many claims paid after June 1, 2021, were submitted to VICTIM COMPANY months after FALCON allegedly provided the covered services. This, combined with the dramatic increase in claims FALCON submitted to VICTIM COMPANY after June 1, 2021, and other information obtained during this

11

investigation, indicate that the service dates on these claims were fictitious and the claims fraudulent.

33.     The balance of WNB x8579 as of June 1, 2021, was $2,429.34. The balance of WNB x1919 as of June 1, 2021, was $2,867.36. The balance of WNB x5087 as of June 1, 2021, was $26,000.00.

34.     This investigation and review of bank records also determined that VICTIM COMPANY made payments by check to FALCON for fraudulently billed services. These checks were deposited into WNB x8579 and WNB x1919. Specifically, investigators identified nineteen checks that were written to FALCON from VICTIM COMPANY, as follows:

| Check Date | Payee | Check # | Amount | |
|---|---|---|---|---|
| | | | Dep to 8579 | Dep to 1919 |
| 10/5/2021 | Kris Williams Falcon | 5591074 | | $ 3,998.28 |
| 10/13/2021 | Kris Williams Falcon | 5594246 | $ 2,961.48 | |
| 10/27/2021 | Kris Williams Falcon | 5599594 | | $ 15,136.26 |
| 10/28/2021 | Kris Williams Falcon | 5599817 | | $ 11,860.00 |
| 11/4/2021 | Kris Williams Falcon | 5602685 | $ 21,950.00 | |
| 11/10/2021 | Kris Williams Falcon | 5604456 | $ 2,780.00 | |
| 11/18/2021 | Kris Williams Falcon | 5607522 | | $ 5,210.51 |
| 11/29/2021 | Kris Williams Falcon | 5611021 | $ 18,541.02 | |
| 12/3/2021 | Kris Williams Falcon | 5612668 | | $ 30,415.12 |
| 12/8/2021 | Kris Williams Falcon | 5614189 | | $ 14,262.18 |
| 12/10/2021 | Kris Williams Falcon | 5614753 | $ 7,614.99 | |
| 1/28/2022 | Kris Williams Falcon | 5631470 | $ 10,637.45 | |
| 2/7/2022 | Kris Williams Falcon | 5633979 | $ 4,349.25 | |
| 3/7/2022 | Kris Williams Falcon | 5642125 | $ 21,752.92 | |
| 3/9/2022 | Kris Williams Falcon | 5643161 | $ 44,077.57 | |
| 5/12/2022 | Kris Williams Falcon | 5660408 | | $ 52,380.00 |
| 5/17/2022 | Kris Williams Falcon | 5661571 | | $ 26,355.00 |
| 5/18/2022 | Kris Williams Falcon | 5661959 | | $ 3,310.00 |
| 6/1/2022 | Kris Williams Falcon | 5665389 | | $ 2,860.00 |

Case 1:23-mj-00119-JLW   Document 1   Filed 03/13/23   Page 13 of 21

| | | | |
|---|---|---|---|
| | $ 134,664.68 | $ | 165,787.35 |
| **Total** | $ 300,452.03 | | |

35.     VICTIM COMPANY provided copies of each of these checks and a corresponding Explanation of Benefits form ("EOB") for each check. Based on review of the EOBs, the payments by check from VICTIM COMPANY included $91,039.54 paid for claims which identified S.B. as the provider and FALCON as the patient subscriber, and $161,315.49 for claims which identified FALCON as both the provider and patient subscriber (i.e., for services FALCON alleged she provided to herself). The remaining EOBs for payments by check did not name a provider, but identified FALCON as the patient subscriber.

36.     After FALCON received VICTIM COMPANY's funds (ACH payments deposited into WNB x8579, and checks deposited to WNB x8579 and WNB x1919), she frequently transferred money back and forth between and among all three accounts identified in paragraph 29.

37.     Based on review of the records obtained from Woodforest National Bank, FALCON made hundreds of interaccount transfers totaling more than $9 million, as summarized in the following table:

| Transfers within accounts | Debits | Credits |
|---|---|---|
| WNB x1919 | $3,726,691.38 | ($1,871,959.84) |
| WNB x8579 | $1,315,293.36 | ($4,652,834.07) |
| WNB x5087 | $4,063,470.73 | ($2,580,661.56) |
| TOTAL | $9,105,455.47 | ($9,105,455.47) |

13

38.     Excluding interaccount transfers and VICTIM COMPANY checks, between June 1, 2021, and January 8, 2023, FALCON's WNB accounts had the following deposit/credit items:

  a.  $4,231,437.14 in ACH deposits from VICTIM COMPANY;[4]

  b.  $149,347.65 in other deposit items such as Cash App transfers and cash deposits.

In other words, less than 3.3% of the funds coming into FALCON's accounts during this time period came from outside sources *other than* VICTIM COMPANY.

39.     The last payment FALCON received from VICTIM COMPANY was an ACH deposit to WNB x8579 on December 7, 2022. However, FALCON continued to submit claims to VICTIM COMPANY after that date. For example, in January 2023, VICTIM COMPANY records show that FALCON submitted claims for $945,090.69 dollars' worth of services.

40.     After April 28, 2021, FALCON paid large sums of money to people who she claimed as patients in her billings to VICTIM COMPANY. As examples, for the individuals listed in the table below, FALCON billed VICTIM COMPANY for services allegedly provided to the individuals, and FALCON also made payments to those same individuals through personal checks and funds transfer applications such as Cash App.

---

[4] As noted in paragraph 30, $4,231,667.85 in ACH payments from VICTIM COMPANY were deposited into WNB x8579 after FALCON's CADC license was revoked on April 28, 2021. The figure in this paragraph does not include ACH payments received between April 28, 2021, and June 1, 2021, which totaled $230.71.

14

| | Claims submitted to VICTIM COMPANY for Patient/Subscriber | | Payments from FALCON |
|---|---|---|---|
| | Paid to FALCON | Paid to Patient/Subscriber | |
| S.B. | $ 282,819.21 | $ 3,242.50 | $ 101,263.76 |
| D.M. | $ 312,422.74 | $ 45,114.72 | $ 351,529.55 |
| A.T. | $ 309,206.55 | $ 29,290.55 | $ 136,980.56 |

The Memo line on checks to these individuals included notes such as "BCBS Pmt Refund", "Payroll" and "Contract Work" (checks to S.B.); "Reimbursement", "Car Purchase" and "Fridge & Curacao Sandals Trip" (checks to D.M.); and "Refund", "End of Yr Bonus" and "Contract Bonus" (checks to A.T.) Notably, the two checks to A.T. identified as bonus payments totaled $42,617.21 and were both written within a span of three weeks.

41.     There are few if any legitimate purposes for the volume of interaccount transfers in FALCON's accounts and checks to alleged patients, and based on my training and experience, individuals engaging in such transfers are attempting to obscure the nature, source, or location of funds obtained from illicit activities.

## VEHICLE PURCHASES

A.     2022 Land Rover Range Rover Evoque, VIN SALZJ2FXXNH164782

42.     According to NCDMV records, FALCON purchased a 2022 Land Rover Range Rover Evoque, VIN SALZJ2FXXNH164782, from Leith, Inc. on 11/29/2021 for a Total Cash Price of $64,217.64, inclusive of taxes and other fees. There was no trade-in for the vehicle.

43.     On 11/9/21, a point-of-sale debit to Leith Inc. in the amount of $5,000.00 posted to WNB x8579.

15

44.     On 11/29/2021, check number 4161, payable to Leith, Inc. in the amount of $59,217.64, was written on WNB x1919. The check appears to be signed by FALCON.

B.     2022 Dodge Charger, VIN 2C3CDXBGXNH134980

45.     According to NCDMV records, FALCON purchased a 2022 Dodge Charger, VIN 2C3CDXBGXNH134980, from Cary Automotive Company DBA Hendrick Dodge Ram Fiat on 4/29/2022 for a total cost (including taxes and fees) of $51,631.92. There was no trade-in for the vehicle. After application of a $2,000 Initial Payment/Cash Down and a $1,750 Rebate/Factory Incentive, the Balance Due was $47,881.92.

46.     On 4/29/2022, check number 4110 in the amount of $47,881.92 was drawn on WNB x1919.  The check appears to be signed by FALCON.

**REAL PROPERTY TRANSACTIONS**

A.     17221 Coves Edge Lane, Charlotte

47.     By a deed dated May 13, 2022, and recorded May 16, 2022, in the Mecklenburg County deed records, FALCON purchased real property known as 17221 Coves Edge Lane, Charlotte, Mecklenburg County, North Carolina.  The deed reflects that it was prepared by The Nixon Firm, PLLC. Based on the transfer tax paid, the purchase price of the property was approximately $670,000.  County real property records do not show any liens recorded at the time of purchase.

48.     On or about April 19, 2022, check number 4106, payable to The Nixon Firm in the amount of $5,000.00, was written on WNB x1919.  The check appears to be signed by FALCON and the For/Memo line reads: "Legal Firm House Sale."  In addition, the

16

address "17221 Cove Edge Ln, Charlotte, NC" is written on the face of check number 4106.

49.     On May 13, 2022, funds in the amount of $646,656.67 were sent via wire transfer from WNB x8579 to an account for The Nixon Firm, PLLC IOLTA Trust Account. The Originator to Beneficiary Info reads: "BUYING PROPERTY."

B.     4016 Wild Nursery Court, Charlotte

50.     By a deed dated October 19, 2022, and recorded October 25, 2022, in the Mecklenburg County deed records, FALCON purchased real property known as 4016 Wild Nursery Court, Charlotte, Mecklenburg County, North Carolina.  The deed reflects that it was prepared by The Nixon Firm, PLLC. Based on the transfer tax paid, the purchase price of the property was approximately $795,000.  County real property records do not show any liens recorded at the time of purchase.

51.     On or about October 22, 2022, a cashier's check payable to The Nixon Firm, PLLC in the amount of $44,178.00, was purchased with funds from WNB x5087.

52.     On October 21, 2022, funds in the amount of $745,031.83 were sent via wire transfer from WNB x5087 to an account for The Nixon Firm, PLLC IOLTA Trust Account. The Originator to Beneficiary Info reads: "HOME BUY."

**APPLICABLE FORFEITURE PROVISIONS**

53.     I understand that property subject to civil forfeiture may be seized pursuant to 18 U.S.C. § 981(b), and property subject to criminal forfeiture may be seized pursuant to 21 U.S.C. § 853(f).  In cases where the Government is not certain at the time of the seizure if it will pursue civil or criminal forfeiture, courts may issue the seizure warrant

17

under both statutes. The probable cause showing is the same for Sections 981(b) and 853(f), except that the latter also requires a showing that a restraining order "may not be sufficient to assure the availability of the property for forfeiture."

54.     An order under 21 U.S.C. § 853(e) may not be sufficient to assure the availability of the property for forfeiture because there is reason to believe that the property is in the custody of the defendant, who cannot reasonably be relied on to abide by an order to maintain the property in substantially the same condition as it is at the present time in order that it will be available for forfeiture. Furthermore, based on my training and experience I know that restraining orders served on banks sometimes fail to preserve the property for forfeiture because the bank representative receiving the restraining order fails to put the necessary safeguards in place to freeze the money in time to prevent the account holder from accessing the funds electronically, or fails to notify the proper personnel as to the existence of the order, or the bank exercises its own right of setoff to satisfy an outstanding debt owed to the bank by the account holder. In contrast, where electronic funds are concerned, a seizure warrant guarantees that the funds will be in the Government's custody once the warrant is served.

55.     I expect that some or all of the property subject to seizure may be found outside the Middle District of North Carolina. Section 981(b)(3) of Title 18, United States Code, explicitly provides jurisdiction for the issuance of seizure warrants for property located in other districts. This statute provides as follows:

> Notwithstanding the provisions of rule 41(a) of the Federal Rules of Criminal Procedure, a seizure warrant may be issued pursuant to this subsection by a judicial officer in any district in which a forfeiture action against the property

18

may be filed under section 1355(b) of title 28, and may be executed in any district in which the property is found.

Issuance of the seizure warrant in this district is appropriate under the above statute, as this is the district "in which ... the acts or omissions giving rise to the forfeiture occurred," 28 U.S.C. § 1355(b)(1)(A). As provided in 18 U.S.C. § 981(b)(3), the warrant may be "executed in any district in which the property is found."

## CONCLUSION

56.     Based on the foregoing, there is probable cause to believe that the federal criminal statutes cited herein have been violated, and that the properties described in paragraph 2 above constitute or are derived from proceeds traceable to the commission of a Federal health care offense or other "specified unlawful activity" (as defined in Title 18, United States Code, Section 1956(c)(7) (including violations of Title 18, United States Code, Sections 1347 and 1343)), and are therefore subject to seizure and forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(7).

57.     Based on the foregoing, there is also probable cause to believe that the properties described in paragraph 2 above were involved in transactions or attempted transactions in violation of Title 18, United States Code, Sections 1956 and/or 1957, or are traceable such properties, and are therefore subject to seizure and forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(A) and 982(a)(1).

58.     Based on the foregoing I respectfully request that this Court issue seizure warrants for the properties described in paragraph 2 above.

19

This the 13th day of March, 2023.

/s/ Corey E. Maser
Corey E. Maser
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this
13th day of March, 2023 at 1:48 pm.

Honorable Joe L. Webster
United States Magistrate Judge
Middle District of North Carolina

20